JAMES T. HANNINK (131747)
jhannink@sdlaw.com
ZACH P. DOSTART (255071)
zdostart@sdlaw.com
DOSTART HANNINK & COVENEY LLP
4180 La Jolla Village Drive, Suite 530
La Jolla, California 92037-1474
Tel: 858-623-4200
Fax: 858-623-4299

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHANNON SMITH, individually and on behalf of all others similarly situated,<br><br>  Plaintiff,<br><br>vs.<br><br>NRT LLC, a Delaware limited liability company; STEVEN PAGANO, individually and d/b/a ADVANCED MARKETING SOLUTIONS, a/k/a 4AMS; and DOES 2-50, inclusive,<br><br>  Defendants. | CASE NO. 3:17-cv-2523-CAB-WVG<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT FOR VIOLATION OF THE TELEPHONE CONSUMER PROTECTION ACT ("TCPA")**<br>**[47 U.S.C. § 227]**<br><br>**DEMAND FOR JURY TRIAL** |

GENERAL ALLEGATIONS

1. Plaintiff Shannon Smith ("Plaintiff") is an individual residing in Orange County, California.

2. Plaintiff is informed and believes and thereon alleges that defendant NRT LLC ("NRT") is a Delaware limited liability company that does business in San Diego County. NRT is a subsidiary of Realogy Holdings Corporation and operates all company-owned real estate offices under Realogy's brands, including Coldwell Banker, Coldwell Banker Commercial, and Sotheby's International Realty.

3. Plaintiff is informed and believes and thereon alleges that defendant Steven Pagano ("Pagano"), formerly identified as fictitious defendant DOE 1, is an individual residing in Placer County, California. Plaintiff is informed and believes and thereon alleges that Pagano does business as a sole proprietorship in the name of Advanced Marketing Solutions, a/k/a 4AMS ("4AMS"), and that Pagano conducts such business throughout California, including within this district.

4. Plaintiff does not know the names of the defendants sued as DOES 2 through 50 but will amend this complaint when that information becomes known. Plaintiff alleges on information and belief that each of the DOE defendants is affiliated with one or more of the named defendants in some respect and is in some manner responsible for the wrongdoing alleged herein, either as a direct participant, or as the principal, agent, successor, alter ego, or co-conspirator of another defendant. For ease of reference, Plaintiff will refer to the named defendants and the DOE defendants collectively as "defendants."

5. Venue is proper in this judicial district because defendants do business in this judicial district.

6. This Court has subject matter jurisdiction over this action based 28 U.S.C. § 1441(a) and the Notice of Removal filed by NRT on December 18, 2017 (Dkt. No. 1).

NRT BACKGROUND

7. According to NRT's website, NRT is the largest residential real estate brokerage firm in the United States and owns and operates companies throughout the country.

8. Plaintiff alleges that defendants utilize an automatic telephone dialer for telemarketing purposes and are placing telephone calls to customers without the consent required under the TCPA.

9. Coldwell Banker posted a job listing on the website Indeed.com for a "Telemarketer/Appointment Setter" in its Pasadena, California office. The following is a portion of that job posting:

> **Telemarketer/Appointment Setter.** … We're looking for a talented sales representative to play a big role in our growth. Our sales team is slammed with good leads. We have a targeted list of interested leads for you to follow up with who actually won't hang up on you.
>
> ….
>
> TASKS:
>
> Responsibilities include scheduling phone and in person appointments, **making about 50-100 calls** per day and communicating efficiently with the rest of the sales team.
>
> Warm and Cold Calling Both Sellers and Buyer Leads.
>
> Help reach out to potential clients that we have obtained from various sources utilizing a VOIP communication system.
>
> ….
>
> Following script(s) and qualification checklist, identify prospects for appointments.
>
> ….
>
> Prospecting requires following up again and again. You will perform this activity routinely and systematically.
>
> ….
>
> You will track qualified leads and help with automated content delivery to increase engagement.
>
> Input leads into database and tracking systems.

A true and correct copy of the Coldwell Banker job posting is attached hereto as Exhibit 1.

10. The job posting attached as Exhibit 1 evidences that defendants utilize automated dialing technology to market their business without first obtaining the consumers' consent before placing the calls.

11. The website of Coldwell Banker Commercial describes its Targeted Acquisition Services ("TAS") concept for locating properties that are not on the market for sale. The website indicates the following regarding its procedure:

> TAS acts as a supplement to an organization's existing acquisitions team, sourcing properties which are not actively marketed for sale. They work collaboratively with clients to identify assets of greatest interest in their target markets. Once the list is established, TAS will strive to uncover every off-market opportunity which meets their client's acquisition criteria through a network of local market experts and **relentless cold-calling campaigns**.
>
> ….
>
> ● A network of local market experts and a team of dedicated cold callers will contact each specified property owner until they have determined whether they might be a potential seller.

A true and correct copy of the Coldwell Banker job posting is attached hereto as Exhibit 2.

12. A former employee posted her resume on the website Indeed.com, indicating that as a "Sales Executive" for Coldwell Banker in Long Beach, California, she had the following responsibilities: "Inside/Outside sales"; "Cold calling, lead follow-up, set appointments, pre-qualify." A true and correct copy of that resume posted to Indeed.com is attached hereto as Exhibit 3.

## PAGANO AND 4AMS BACKGROUND

13. According to the website, www.4ams.com, 4AMS is "one of the leading providers of outbound, live operator direct marketing services on the West Coast." See http://www.4ams.com/call-center.html (last accessed January 4, 2018). That same website explains that the primary focus of 4AMS is "lead generation," and that 4AMS utilizes "predictive dialers" to "systematically call consumers and transfer successful connections to a designated telesales representative (TSR) …." A true and correct copy of that webpage is attached hereto as Exhibit 4. A primary focus of Pagano and 4AMS appears to be lead generation for real estate agents. As explained by the 4AMS website, 4AMS "manage[s] and make[s] the calls," including identification of "IMPOSSIBLE TO FIND CELL PHONE NUMBERS." See http://www.4ams.com/farm-club.html (last accessed January 4, 2018). A true and correct copy of that webpage is attached hereto as Exhibit 5.

3
FIRST AMENDED CLASS ACTION COMPLAINT                    No. 3:17-cv-2523-CAB-WVG

14.     Plaintiff is informed and believes and thereon alleges that Pagano, who identifies himself as "President" of 4AMS, acting alone or in concert with others, formulated, implemented, participated in, assisted in, authorized, oversaw, directed, and/or ratified the conduct of 4AMS as alleged herein, that Pagano set company policy with respect to the matters alleged herein, and that Pagano failed to take efforts to implement appropriate policies or procedures to comply with legal requirements.

<div style="text-align:center;">TCPA -- GENERAL ALLEGATIONS</div>

15.     Within the relevant statute of limitations, Plaintiff received at least one telephone call from defendants on her cellular telephone, during which defendants' representative attempted to sell defendants' services to Plaintiff.

16.     Plaintiff is unaware how defendants obtained her cell phone number. When plaintiff asked how defendants had obtained her cell phone number, the representative declined to provide a definitive answer.

17.     Plaintiff is informed and believes and thereon alleges that the telephone call to Plaintiff's cellular telephone was initiated by defendants for the purposes of informing Plaintiff about the commercial availability of real estate brokerage services and encouraging Plaintiff to purchase those services. As such, the call constituted an "advertisement" as defined in 47 C.F.R. § 64.1200(f)(1) and "telemarketing" as defined in 47 C.F.R. § 64.1200(f)(12).

18.     Within the telemarketing industry, it is common for telemarketers to utilize equipment to automate the step of telephone dialing. *See In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14022 (July 3, 2003) ("2003 FCC Order"). Use of such technology enables telemarketing employees to devote more time to selling rather than dialing phone numbers. Such technology can include equipment that has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator, and to dial such numbers, and/or equipment that stores pre-programmed numbers or receives numbers from a computer database and then, for the sake of efficiency, dials those numbers in a manner that predicts the time when the called party will answer the phone and a telemarketer will be available to take the call (a "predictive dialer"). *See id*. at 14022, n.31,

14090-91. In either case, the basic function of such equipment is to dial numbers without human intervention, and a predictive dialer falls within the meaning and statutory definition of "automatic telephone dialing system" as set forth in 47 U.S.C. § 227(a)(1). 2003 FCC Order at 14091-93.

19. Based on the foregoing, Plaintiff is informed and believes and thereon alleges that the call Plaintiff received on her cellular telephone was initiated by defendants using equipment that has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator, and to dial such numbers, and/or a predictive dialer, such that the call was initiated using an automatic telephone dialing system within the meaning of 47 U.S.C. § 227(a)(1).

20. Defendants did not obtain Plaintiff's prior express written consent before placing the call to Plaintiff's cellular telephone. Accordingly, the call was placed by defendants in violation of 47 U.S.C. § 227(b)(1) and 47 C.F.R. § 64.1200(a)(2).

## CLASS ACTION ALLEGATIONS

21. Plaintiff brings this lawsuit as a class action under Rule 23 of the Federal Rules of Civil Procedure. Plaintiff seeks to represent a Class defined as follows: "All natural persons nationwide who, during the applicable limitations period, received a telephone call from defendants that was (1) made to their cellular telephone and (2) initiated by defendants using an artificial or prerecorded voice and/or an automatic telephone dialing system. Excluded from the class are all employees of defendants, all employees of defendants' counsel, and all employees of Plaintiff's counsel."

22. <u>Ascertainability</u>. The members of the Class may be ascertained by reviewing records in the possession of defendants and/or third parties, including without limitation defendants' call records, customer records, call lists, and audio recordings.

23. <u>Common Questions of Fact or Law</u>. There are questions of fact or law that are common to the Class which predominate over individual issues. Common questions regarding the Class include, without limitation: (1) defendants' policies and procedures for obtaining prior express written consent from customers or potential customers to place telephone calls to their cellular telephones; (2) what type of telephone dialing system defendants used to initiate calls to

1  cellular telephones; (3) whether defendants initiated calls to cellular telephones using an artificial
2  or prerecorded voice; (4) whether defendants' telephone calls constitute "advertisement" as
3  defined in 47 C.F.R. § 64.1200(f)(1) and/or "telemarketing" as defined in 47 C.F.R.
4  § 64.1200(f)(12); (5) defendants' record-keeping practices; and (6) the appropriate remedies for
5  defendants' conduct.

6  24.  <u>Numerosity</u>.  The Class is so numerous that joinder of all Class members would be
7  impracticable.  Plaintiff is informed and believes and thereon alleges that the Class consists of at
8  least 50 members.

9  25.  <u>Typicality and Adequacy</u>.  Plaintiff's claims are typical of the claims of the
10 members of the Class.  Plaintiff alleges on information and belief that other Class members also
11 received one or more telemarketing calls to their cellular telephones that were initiated by
12 defendants using an automatic telephone dialing system and/or an artificial or prerecorded voice,
13 without first providing prior express written consent to receive such calls.  Plaintiff has no
14 interests that are adverse to those of the other Class members.  Plaintiff will fairly and adequately
15 protect the interests of the Class members.

16 26.  <u>Superiority</u>.  A class action is superior to other methods for resolving this
17 controversy.  Because the damages suffered by each Class member are low, the expense and
18 burden of individual litigation would make it impracticable for Class members to redress the
19 wrongs done to them.  Class certification would also conserve judicial resources and avoid the
20 possibility of inconsistent judgments.

21 <center>FIRST CAUSE OF ACTION</center>
22 <center>(Violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227)</center>

23 27.  Plaintiff incorporates the previous allegations as if set forth herein.

24 28.  Plaintiff is informed and believes and thereon alleges that, within the limitations
25 period, and without first obtaining the prior express written consent of Plaintiff or the Class
26 members, defendants initiated telephone calls to Plaintiff's and Class members' cellular
27 telephones using an automatic telephone dialing system and/or an artificial or prerecorded voice,
28 in violation of 47 U.S.C. § 227(b) and 47 C.F.R. § 64.1200(a)(2).

29. Plaintiff is informed and believes and thereon alleges that the telephone calls were initiated by defendants for the purposes of informing Plaintiff and Class members about the commercial availability of defendants' services and encouraging Plaintiff and Class members to purchase those services. As such, each call constituted an "advertisement" as defined in 47 C.F.R. § 64.1200(f)(1) and "telemarketing" as defined in 47 C.F.R. § 64.1200(f)(12).

30. Plaintiff is informed and believes and thereon alleges that the telephone calls to Plaintiff's and Class members' cellular telephones were made by defendants knowingly and willfully.

31. As a result of defendants' conduct, Plaintiff and the Class members are entitled to injunctive relief pursuant to 47 U.S.C. § 227(b)(3)(A) and statutory damages of at least $500 per violation and up to $1,500 per violation pursuant to 47 U.S.C. § 227(b)(3).

## PRAYER

WHEREFORE, Plaintiff prays for judgment against defendants as follows:

1. For statutory damages as alleged herein;
2. For injunctive relief as alleged herein;
3. For reasonable attorneys' fees;
4. For costs of suit;
5. For pre-judgment interest; and
6. For such other relief that the Court deems proper.

Dated: January 8, 2018         DOSTART HANNINK & COVENEY LLP

s/Zach P. Dostart
ZACH P. DOSTART
Attorneys for Plaintiff
Email: zdostart@sdlaw.com

| | |
|---|---|
| 1 | <div align="center">DEMAND FOR JURY TRIAL</div> |
| 2 | Plaintiff hereby demands trial by jury on all claims so triable. |
| 3 | Dated: January 8, 2018         DOSTART HANNINK & COVENEY LLP |

<div style="text-align:right">
s/Zach P. Dostart<br>
ZACH P. DOSTART<br>
Attorneys for Plaintiff<br>
Email: zdostart@sdlaw.com
</div>

834735.1